# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DANTE R. VOSS,

        Plaintiff,

vs.                                    Case No. 03-C-1046

DR. BETSY LUXFORD,

        Defendant.

# ORDER

The *pro se* plaintiff, Dante R. Voss, who is incarcerated at the Jackson Correctional Institution, is proceeding *in forma pauperis* on civil rights claims brought pursuant to 42 U.S.C. § 1983. Specifically, the plaintiff is proceeding on an Eighth Amendment medical care claim against defendant Dr. Betsy Luxford. (February 6, 2004 Order). The defendant filed a motion to dismiss on October 29, 2004, which the plaintiff opposes. The defendant also filed a motion for summary judgment on January 10, 2005. The plaintiff does not oppose the summary judgment motion. (Plaintiff's Letter Filed March 28, 2005). The defendant's motions are addressed herein.

**I.    Defendant's Motion to Dismiss**

The defendant argues that the complaint fails to state a claim because, under the Eighth Amendment, disagreement with medical treatment does not amount to deliberate indifference. The plaintiff filed a brief and affidavit in opposition to the defendant's motion.

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). Dismissal of an

action under such a motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle him to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997); *see Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999). The facts alleged in the complaint are assumed to be true, and all facts, and all reasonable inferences flowing from those facts, are read in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir. 1990). Facts alleged in a brief in opposition to a motion to dismiss as well as factual allegations contained in other court filings of a *pro se* plaintiff may be considered when evaluating the sufficiency of a complaint so long as they are consistent with the allegations of the complaint. *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).

The plaintiff states that after being transferred to Waupun Correctional Institution (WCI), where, at the times relevant to this action, defendant Betsy Luxford worked as a psychiatrist, he was placed in punitive segregation. (Amended Complaint ¶¶ 2-3, 5-6). Sometimes between his arrival at WCI on October 21, 2001, and December, 2002, the plaintiff was taken off the medication, Klonopin. *Id.* at ¶ 7. The plaintiff states that he began having anxiety attacks, and auditory and visual hallucinations. *Id.* at ¶ 8. On December 11, 2002, the plaintiff was placed in segregation. Being locked in one room and not taking Klonopin caused him to hear voices telling him to kill himself. *Id.* at ¶ 9.

Between December 16, 2002, and January 29, 2003, the plaintiff made approximately 18 written requests to Betsy Luxford to be seen because of the hallucinations. *Id.* at ¶ 10. The defendant put the plaintiff on her own regimen of medication on December 11, 2002, though the plaintiff informed her that he had been on these medications and they "didn't work." *Id.* at ¶ 11. The plaintiff wrote to defendant Luxford "numerous times to let her know that [he] was having these hallucinations and that they would not go away." *Id.* at ¶ 13. While in segregation, the plaintiff tried to kill himself three times "because of the hallucinations." *Id.* at ¶ 14.

The plaintiff was in constant contact with two crisis workers, George Kaemmer and Sara Coleman. *Id.* at ¶ 15. He was transferred, on referral of Mr. Kaemmer, to the Wisconsin Resource Center in March 2003, "to have [his] medications straightened out." *Id.* at ¶ 16.

The plaintiff claims that he was delayed access to medical attention by the defendant, though he was in need of emergency services, and was denied the "proper medication" to control the auditory and visual hallucinations and anxiety attacks. *Id.* at ¶ 19. He claims that defendant Luxford violated his Eighth Amendment right to be free from cruel and unusual punishment.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmeyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman*, 241 F.3d at 845 (citing *Farmer*, 511 U.S. at 840-42).

In determining whether an official's conduct rises to the deliberate indifference standard, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of

an inmate's medical care." *Gutierrez*, 111 F.3d at 1375. In *Gutierrez*, isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. *Id.* Similarly, in *Dunigan v. Winnebago County*, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. "[A]n inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

The defendant does not dispute, for the purposes of her motion to dismiss, that the plaintiff has alleged a serious medical need. Rather, she contends that the plaintiff's claim amounts to a disagreement with medical treatment – namely that the plaintiff disagreed with defendant Luxford's choice of prescribed medication. She notes that it is undisputed that she "treated plaintiff." (Defendant's Brief in Support of Motion to Dismiss at 5). Disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle*, 429 U.S. 97. *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003). The defendant also argues that the complaint "does not connect Dr. Luxford at all to his hallucinations and anxiety attacks and suicide attempts." (Defendant's Brief in Support of Motion to Dismiss at 5). Defendant Luxford urges that, having failed to allege her deliberate indifference, the plaintiff's complaint should be dismissed.

-5-
Case 2:03-cv-01046-RTR   Filed 07/28/05   Page 5 of 18   Document 54

While mere medical disagreements or even medical malpractice do not amount to deliberate indifference, "to prevail on an Eighth Amendment claim 'a prisoner is not required to show that he was literally ignored.'" *Greeno v. Daley*, No. 01-4119, 2005 WL 1540261 at *6 (7th Cir. July 1, 2005) (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). A defendant's contention that a medical care claim fails because the prisoner "received *some* treatment overlooks the possibility that the treatment [the prisoner] did receive was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' his condition." *Greeno*, 2005 WL 1540261 at *6 (quoting *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (internal quotations omitted).

In response to the defendant's motion to dismiss, the plaintiff filed an affidavit containing averments consistent with the complaint. He avers that he told the defendant in "many conversations" that he was "having hallucinations telling [him] to kill [himself]." (Affidavit of Dante R. Voss [Voss Aff.] ¶ 6). He notified her that the medications which she had discontinued were "found to work for" him. *Id.* at ¶ 7. The plaintiff also avers that he told defendant Luxford that he "had tried to commit suicide in the past and that [he] had tried to commit suicide while in segregation at Waupun Correctional Institution." *Id.* at ¶ 8.

Taking the facts as true and drawing all reasonable inferences in the light most favorable to the plaintiff, it appears the plaintiff could establish that, despite being alerted by the plaintiff to his continuing hallucinations and anxiety attacks and despite successive suicide attempts at WCI, defendant Luxford continued to prescribe ineffective medications. Accordingly, dismissal

of the complaint on the basis of the defendant's motion is inappropriate. Her motion to dismiss will be denied.

## II. Defendant's Motion for Summary Judgment

The defendant argues that the plaintiff has not exhausted his administrative remedies with respect to the entire period of time implicated by his § 1983 complaint, but only a portion thereof. She argues that she was not personally involved in the initial termination of the plaintiff's prescription for Klonopin. With respect to the plaintiff's claims concerning defendant Luxford's later refusal to prescribe Klonopin, she argues that the plaintiff has not alleged a serious medical need. Defendant Luxford further argues that she was not deliberately indifferent to the plaintiff's medical needs because she was exercising her professional judgment and because her judgment was in line with the professional judgment of other treating psychiatrists. Finally, the defendant argues that she is entitled to qualified immunity.

The defendant notified the plaintiff of the consequences of failing to respond to a summary judgment motion with his own admissible evidence. (Defendant's Motion for Summary Judgment; Certificate of Service Filed January 10, 2005). As required by the local rules, the defendant included copies of Fed. R. Civ. P. 56(e) and (f), and Civ. L. R. 56.1, 56.2 and 7.1 (E.D. Wis.) with her notice to the plaintiff.

The plaintiff filed a letter notifying the court that he did not "intend to file a motion for summary judgment nor contest the defendant's motion for summary judgment." (Plaintiff's Letter Filed March 28, 2005). The plaintiff's complaint is not sworn, and thus cannot be treated as an affidavit in opposition to summary judgment. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th

Cir. 1996). Thus, the facts relevant to the defendant's motion for summary judgment have been taken from the affidavits and affidavit exhibits of Pamela S. Fuller, Defendant Dr. Betsy A. Luxford, Dr. Susan Curran, and Trey Greeley, submitted by the defendant in support of her motion for summary judgment, as well as the plaintiff's affidavit in opposition to the defendant's motion to dismiss.

**A.    Exhaustion**

The Prison Litigation Reform Act of 1995 (PLRA), Pub.L. 104-134, 110 Stat. 1321 (1996), provides in pertinent part that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is a condition precedent to suit. *Dixon v. Page*, 291 F.3d 485, 488 (7th Cir. 2002) (citing *Perez v. Wisconsin Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999)). Section 1997e applies to "all inmate suits, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

The Inmate Complaint Review System (ICRS) within the Wisconsin prisons is the administrative remedy available to inmates with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code § DOC 310.01(2)(a). The Wisconsin Administrative Code specifically provides that before an inmate may commence a civil action, the inmate shall exhaust all administrative remedies that the Department of Corrections has promulgated by rule. Wis. Admin. Code § DOC 310.05. The ICRS is available for inmates to

"raise significant issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights complaints." Wis. Admin. Code § DOC 310.08(1).

In order to use the ICRS, an inmate must file a complaint with the inmate complaint examiner (ICE) within 14 days after the occurrence giving rise to the complaint. Wis. Admin. Code §§ DOC 310.07(1) & 310.09(6). Complaints submitted later than 14 days after the event may be accepted for good cause. Wis. Admin. Code § DOC 310.09(6). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority." Wis. Admin. Code §§ DOC 310.11(2) & 310.11(11). The appropriate reviewing authority makes a decision within 10 days following receipt of the recommendation. Wis. Admin. Code § DOC 310.12. Within 10 days after the date of the decision, a complainant dissatisfied with a reviewing authority decision may appeal that decision by filing a written request for review with the corrections complaint examiner (CCE). Wis. Admin. Code § DOC 310.13(1). The CCE reviews the appeal and makes a recommendation to the secretary of the Department of Corrections. Wis. Admin. Code § DOC 310.13(6). The secretary may accept, adopt, or reject the CCE's recommendation, or return the appeal to the CCE for further investigation. Wis. Admin. Code § DOC 310.14(2).

Pamela S. Fuller is the Registrar at WCI and a custodian of the inmate complaints filed at WCI, who reviewed the regularly conducted business records of her office. (Pamela S. Fuller [Fuller Aff. ¶¶ 1-3). The undisputed facts are that the plaintiff filed and exhausted one inmate complaint, number WCI-2003-5103, concerning defendant Luxford's alleged refusal to prescribe "numerous meds" to treat the plaintiff's mental health issues. (Fuller Aff. ¶¶ 2, 4-7,

Ex. 1002-03). This exhausted inmate complaint addressed a period of time between January 30 and February 6, 2003. *See* Fuller Aff. ¶ 6, Ex. 1002.

Defendant Luxford argues the plaintiff has only exhausted his administrative remedies to the extent that his § 1983 complaint concerns her alleged conduct between January 30 and February 6, 2003. The plaintiff's § 1983 complaint alleges that, "Between Oct. of 2002 and April 2003, [he] suffered emotional, physical, and mental pain because [he] was taken off medications that [he] had been on for approximately three years." (Complaint ¶ 17). Defendant Luxford argues that to the extent that the plaintiff's § 1983 complaint concerns her conduct occurring before January 30, 2003, or after February 6, 2003, it must be dismissed for the plaintiff's failure to exhaust administrative remedies.

The exhaustion requirement is intended to afford prison officials the opportunity to address internal problems presented in inmate complaints before a prisoner initiates a federal lawsuit. *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004). The plaintiff did not provide prison officials with that opportunity with respect to events occurring before January 30, 2003, or after February 6, 2003, thus, his claims based on events outside that period must be dismissed for the plaintiff's failure to exhaust administrative remedies.

However, the court notes that even if the plaintiff sufficiently notified prison officials of his complaints about defendant Luxford spanning October 2002 through April 2003, the defendant is nonetheless entitled to summary judgment on her claims for the reasons discussed in the remainder of this order.

### B. Personal Involvement

The plaintiff alleges that sometime between October 21, 2002, and December of 2002, he was "taken off of Klonopin." (Complaint ¶ 7). He does not specifically allege that defendant Luxford made the initial determination to take the plaintiff off of this medication.

According to the plaintiff's medical records, Dr. Parikh discontinued the plaintiff's Klonopin prescription on November 8, 2002. (Affidavit of Betsy A. Luxford [Luxford Aff.] ¶ 51, Ex. 1001B at 477). This occurred prior to the first appointment between the plaintiff and the defendant on December 11, 2002. (Luxford Aff. ¶ 55).

"Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation." *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Section 1983 does not create collective or vicarious responsibility. *See Pacelli v. DeVito*, 972 F.2d 871, 877 (7th Cir. 1992).

The undisputed facts reveal that the defendant was not personally involved in the initial discontinuation of the plaintiff's Klonopin prescription. Thus, the defendant is entitled to summary judgment on this part of the plaintiff's claim.

### C. Refusal to Prescribe Klonopin

The court will now turn to whether defendant Luxford is entitled to summary judgment on the plaintiff's claim that her refusal to prescribe Klonopin violated the plaintiff's Eighth Amendment rights. As previously discussed, to establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official

acted with deliberate indifference to the prisoner's health or safety. *Farmer*, 511 U.S. at 834; *Chapman*, 241 F.3d at 845; *see also Estelle*, 429 U.S. at 104-05; *Zentmeyer*, 220 F.3d at 810.

The defendant argues that the plaintiff has not alleged an objectively serious medical need because: 1) he has not been diagnosed with a recognized psychiatric disorder; 2) his medical records evince no psychotic symptoms; and 3) the specific medical treatment he seeks, Klonopin, would not address his alleged medical needs. The defendant further argues that she was not deliberately indifferent to any serious medical needs of the plaintiff because she exercised her professional judgment and her judgment was in line with those of other treating professionals.

Not all medical conditions are sufficiently serious so as to implicate the Eighth Amendment. *Reed*, 178 F.3d at 853. "The Constitution is not a charter of protection for hypochondriacs." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). However, mental illness and the "need for mental illness treatment could certainly be considered a serious medical need." *Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).

The defendant argues that "the alleged medical need must be based on a serious psychiatric disorder recognized by mental health professionals." (Defendant's Brief at 7) (citing *Meriweather v. Faulkner*, 821 F.2d 408, 411 (7th Cir. 1987)*, cert. denied*, 484 U.S. 935 (1987)). The plaintiff has not specified the nature of his mental illness. Rather, he refers only to his symptoms and multiple suicide attempts. *See* Complaint; *see also* Voss Aff. ¶¶ 11, 13 (referring to "problems with [the plaintiff's] mental health" and his "mental health needs").

In *Meriweather*, the district court's dismissal of a prisoner's § 1983 complaint was reversed by the United States Court of Appeals for the Seventh Circuit. 821 F.2d at 410. Concluding that gender dysphoria was not a serious medical need, the district court dismissed the prisoner's medical care claim related to prison officials' refusal to provide treatment, including estrogen therapy, for this condition. *Id.* at 411. The Seventh Circuit reversed the district court's dismissal noting that "Transsexualism has been recognized as a serious psychiatric disorder." *Id.*

This court does not interpret *Meriweather* as requiring that a prisoner's complaint concerning mental illness allege a condition recognized by case law as a "serious psychiatric disorder." *Id.* Rather, that language instructs that a district court should not dismiss for failure to state a claim allegations related to a medical condition recognized as serious. This view of *Meriweather* is in line with circuit law concerning what must be alleged to state a claim. A plaintiff need only allege a serious medical need which "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn,* 251 F.3d at 593. A lay person would easily recognize the need for medical treatment of auditory and visual hallucinations and multiple suicide attempts. Thus, to the extent that the defendant's motion for summary judgment is based on the plaintiff's failure to *allege* a *recognized* psychiatric disorder, it cannot succeed.

Nonetheless, it is the plaintiff's burden to *demonstrate* that he had a serious medical need to which the defendant was deliberately indifferent. The record reveals the following facts concerning the plaintiff's medical condition.

The plaintiff claims to be schizophrenic, but the plaintiff's medical records, which are an exhibit to the affidavit of the custodian of those records, Trey Greeley, has not been diagnosed with disorder by any of the seven psychiatrists who have treated him over the last four years. (Luxford Aff. ¶¶ 14, 43, 70; Affidavit of Trey Greeley [Greeley Aff.] ¶¶1-4), Ex. 1001B at 138-140, 148-49, 502-03, 670). The plaintiff has been diagnosed as having a personality disorder and behavioral problems, with a history of alcohol and marijuana abuse. (Luxford Aff. ¶¶ 70; Greeley Aff., Ex. 1001B at 138-40, 502-03).

The plaintiff's medical records, including his psychological services record which are attached as an exhibit to the affidavit of the custodian of those records, Dr. Susan Curran, reflect that the plaintiff has reported psychotic symptoms. (Luxford Aff. ¶¶ 18, 23, 25, 35, 37; Affidavit of Dr. Susan Curran [Curran Aff.] ¶¶ 1-4, Ex. 1001A at 164-65, 173-175; Greeley Aff., Ex. 1001B at 511, 664-65). However, the defendants point to the plaintiff's medical records as being devoid of objective evidence of the plaintiff's difficulty ordering his thoughts or communicating. (Luxford Aff. ¶¶ 14, 23, 70; Greeley Aff., Ex. 1001B at 502-03, 665, 670). Rather, the plaintiff's medical records reflect that the plaintiff is goal-directed and focused. (Luxford Aff. ¶¶ 14, 57, 69; Greeley Aff., Ex. 1001B at 502-03, 670; Curran Aff., Ex. 1001A at 140).

Klonopin, the prescription drug at issue in the plaintiff's medical care claim, is habit forming, and not designed to treat suicidal or schizophrenic individuals, but rather is used to treat panic and seizure disorders. (Luxford Aff. ¶ 8). The plaintiff sought Klonopin to address hearing voices, but was instead proscribed non-addictive, non-psychotic drugs to address this

problem. (Luxford Aff. ¶¶ 6-7, 11, 14, 36-37, 43, 63-65, 71; Greeley Aff., Ex. 1001B at 148-49, 502-05, 511, 661, 669-70; Curran Aff., Ex. 1001A at 71-72, 182; Fuller Aff., Ex. 1002). The plaintiff was also given lithium to deal with racing thoughts and mood swings. (Luxford Aff. ¶¶ 11, 16, 62; Greeley Aff., Ex. 1001B at 504-05, 669).

The plaintiff avers that he has a history of suicide attempts, including while incarcerated in segregation at WCI. (Voss Aff. ¶ 8). He also avers that he experienced hallucinations telling him to kill himself. *Id.* at ¶ 6.

Drawing reasonable inferences in the plaintiff's favor, on the basis of his affidavit, a reasonable trier of fact could conclude that the plaintiff's condition – as manifested in hallucinations and suicide attempts – is a serious medical need. Thus, the court will turn to the defendant's argument that she was not deliberately indifferent to the plaintiff's serious medical need.

To be deliberately indifferent, a prison official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar*, 940 F.2d at 238. Disagreement with medical professionals about treatment needs does not amount to deliberate indifference. *Ciarpaglini*, 352 F.3d at 331. However, treatment which is blatantly inappropriate such that it is likely to seriously aggravate a plaintiff's condition constitutes deliberate indifference. *See Greeno*, 2005 WL 1540261 at *6.

The defendant contends that she exercised her professional judgment in prescribing medications other than Klonopin to treat the plaintiff's symptoms. She adjusted her schedule

to meet with the plaintiff at his request earlier than appointed to discuss his medications. (Luxford Aff. ¶ 61; Greeley Aff., Ex. 1001B at 504-05). Defendant Luxford prescribed the non-habit-forming anti-psychotic medication, Haldol, to treat the plaintiff's disorganized thinking, psychotic thinking, aggression and false perceptions. (Luxford Aff. ¶ 63; Greeley Aff., Ex. 1001B at 504-05). The defendant prescribed the plaintiff lithium, a mood stabilizer and the anti-psychotic medication, Thorazine. (Luxford Aff. ¶¶ 16, 69, 71; Fuller Aff. ¶ 7, Ex. 1003; Greeley Aff. , Ex. 1001B at 502-03).

The defendant tried to find safe medications to treat the plaintiff's symptoms, thus, when he requested Klonopin to address hearing voices, she prescribed Haldol. (Luxford Aff. ¶¶ 63-64; Greeley Aff. , Ex. 1001B at 504-05). In March 2003, after the plaintiff stopped taking the Haldol and requested the habit-forming tranquilizer, Miltown, the defendant explained to the plaintiff why he should not be prescribed such benzodiazepines. (Luxford Aff. ¶¶ 66-67, 69; Greeley Aff., Ex. 1001B at 502-03). During the plaintiff's discussion of his perceived need for benzodiazepines, the defendant noted that the plaintiff's thoughts were focused and goal directed and that he had no problems communicating with her. (Luxford Aff. ¶ 69; Greeley Aff., Ex. 1001B at 502-03). She suspected that the plaintiff was exaggerating his symptoms seeking benzodiazepines. (Luxford Aff. ¶ 70; Greeley Aff., Ex. 1001B at 502-03). Thus, she prescribed a non-habit-forming medication capable of treating the plaintiff's symptoms, Thorazine, to replace the Haldol. (Luxford Aff. ¶ 71; Greeley Aff., Ex. 1001B at 502-03).

Moreover, the defendant's professional judgment was in line with that of other treating psychiatrists who routinely denied the plaintiff the habit-forming drugs, such as Ritalin and

Klonopin, that he requested. *See, e.g.,* Luxford Aff. ¶ 14; Greeley Aff, Ex. 1001B at 670 (Dr. Kallas refused to prescribe Ritalin and prescribed very low dose of Klonopin believing the plaintiff to be feigning symptoms, then resisted pressure from the plaintiff to increase the Klonopin); Luxford Aff ¶¶ 20-23; Greeley Aff., Ex. 1001B 665-66 (Dr. Patil refused to prescribe the plaintiff Ritalin or Klonopin); Luxford Aff. ¶¶ 25-26, 28, 31-33; Greeley Aff., Ex. 1001B at 167, 662-64, 637 (Dr. Larson prescribed Ritalin but later discontinued it, and prescribed Risperdal to address the plaintiff hearing voices after taking the plaintiff off Klonopin which had been used to treat insomnia).

It is undisputed that the defendant was exercising her professional medical judgment in prescribing medications other than Klonopin to treat the plaintiff's symptoms. It is undisputed that this judgment was in line with that of other treating professionals. The plaintiff has not demonstrated that he has more than a disagreement about treatment choices with the defendant. *See Ciarpaglini*, 352 F.3d at 331. He has not demonstrated by "verifying medical evidence in the record" any "detrimental effect of [the alleged] delay in medical treatment." *Langston*, 100 F.3d at 1240. Further, the plaintiff has not demonstrated that he received treatment so blatantly inappropriate that it is likely to seriously aggravate his condition. *See Greeno*, 2005 WL 1540261 at *6. Thus, the court will "defer to the informed judgment of prison officials as to the appropriate form of medical treatment." *Meriweather*, 821 F.2d at 414. As there is no basis on which to conclude that the defendant was deliberately indifferent, she will be granted summary judgment. In light of the foregoing, the court need not reach the defendant's qualified immunity argument.

## **ORDER**

**IT IS THEREFORE ORDERED** that the defendant's motion to dismiss (Docket # 29) is **denied**.

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment (Docket # 39) is **granted**.

**IT IS FURTHER ORDERED** that the complaint and this action are **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of July, 2005.

BY THE COURT:

s/Rudolph T. Randa
HON. RUDOLPH T. RANDA
Chief Judge